Case number 18-5862, David Crowley v. Anderson County, Tennessee, et al. Argument not to exceed 15 minutes per side. Ms. Burchett, you may proceed for the appellant. May it please the court. My name is Caitlin Burchett and I represent defendant appellates N.J. Yeager and Anderson County, Tennessee, which respectfully request that this court make a determination as to the applicability of qualified immunity as it pertains to defendant Yeager. Further, if this court does determine that qualified immunity is applicable to defendant Yeager, we respectfully request that this court further dismiss the claims against Anderson County as well Also, at this time, we respectfully request five minutes to be reserved for rebuttal. As your honors are aware, this case has a very extensive factual background that also is intertwined with a criminal proceeding. And if this was a trial on the merits, a review of this would be necessary. However, as we are just looking at a question of law as the applicability of qualified immunity, it doesn't appear necessary to delve into these facts. And so if it's OK with the court, I will save the time of detailing these facts and just apply them through my analysis. So after the briefings, as it stands in this matter, it appears that for the court to determine the applicability of qualified immunity, there are two sub issues that need to be determined. Whether the district court erred by not making a determination as to qualified immunity, and then whether qualified immunity is applicable as to the remaining charges against defendant Yeager. These defendants would first assert that qualified immunity was properly brought, not only on one occasion, but on three separate instances. We raise the defense of qualified immunity in our answer to the second minute complaint. We then raise the issue of qualified immunity in a motion to dismiss, where the district court, properly in accordance with the precedent of this court, reserved determination on that until a later stage in the proceedings. What is the claim on which you're claiming qualified immunity? We're claiming qualified immunity as to all federal claims against Mr. Yeager. And as it stands today, that would be the conspiracy for a civil rights or the civil rights conspiracy, Your Honor. The civil rights conspiracy is a conspiracy to violate the civil rights of Crowley by doing what? In this case, it would be by maliciously prosecuting him in this instance. Okay, so that's really the only thing that you're claiming qualified immunity for at this point, because you won on summary judgment on the merits on three other claims. Yes, Your Honor. And so as it stands today, the district court made no determination at all as to any of the claims as to qualified immunity. As this court is aware, when the defense of qualified immunity is properly raised, the district court must fully and completely make a determination, set forth with precision the basis for its determination. It did not do that here. If you look at the memorandum opinion in order in the record, it's clear that they knew they needed to do this. They did it for Defendant Corbett. But in effect, the other claims that you won on, the summary judgment, by saying that there was no violation of a right, in effect, the district court was going through step one of qualified immunity. So shouldn't we get right to the point that I thought this appeal was focusing on? Should qualified immunity be granted to Yeager on the conspiracy to violate civil rights by malicious prosecution? Yes, Your Honor. So as it pertains to the conspiracy to violate the civil rights by malicious prosecution, we would assert that the district court, in its opinion, appears to say that because there is an alleged constitutional violation as to Defendant Corbett, the conspiracy rides through to Defendant Yeager. However, looking at the case law on qualified immunity, when qualified immunity is to be determined, it's supposed to look at the individual acts and not base the determination on qualified immunity. What are the individual acts that Yeager supposedly engaged in? He was the county attorney, correct? Yes, Your Honor. His job is to investigate allegations of wrongdoing in the county, especially against public officials, I suppose. That is one of his job functions. It's an ethical obligation more than anything. As a county attorney, he's really procedural and civil aspects of the county. He's not really a criminal investigator. However, he has this ethical obligation of being proactive when he's informed of alleged wrongdoing by another county employee, and that's what happened here. This is also a question for your friend on the other side, but what was his role in the prosecution as opposed to sort of the investigation and turning over information? What's the best allegation against you and what's your response? Your Honor, I would maintain that he did not prosecute whatsoever. I guess his role, based on their assertion, would be that the memorandum he drafted was the catalyst that started this whole thing, but once he drafted the memorandum and handed it over to the district attorney, he essentially washed his hands of it. He had no role. Well, suppose, hypothetically, that Yeager made up something adverse to Crowley and put it in this memo with the intent, hypothetically, of causing a prosecution of Crowley. Yeager gives this memo to the person who's going to prosecute, the DA, and the DA then goes ahead and prosecutes. Because the DA, hypothetically, and your client, Yeager, had an agreement that it would be great, maliciously, to prosecute Crowley. Would that allow a claim of conspiracy against your client to go forward? I know it's a convoluted hypothetical, but... I think it could allow a claim to go forward, but then, again, you also have to look at the district court's finding, as to malicious prosecution, that this memorandum drafted by Yeager was so attenuated that it could not be seen to have resulted in any way Mr. Yeager influencing, directing, or actually prosecuting this claim himself. Was there an allegation that anything in the report was made up? I believe there was an allegation that facts were admitted, but I'm not sure as to what those facts were. As it is my understanding of this memorandum, it basically set forth these allegations, and then proceeded to state the statute had violated, and then Mr. Yeager's belief that the statute had been violated. The allegations are the five inspections done without a license. Yes. I'll probably ask this to your friend as well, but what was Crowley's explanation for why he did five? He seemed to be aware of the law, and he, I think, pretty readily confessed that he did five inspections without a license. I know he won the trial, and the jury found there was no harm as a result, but did he have an argument as to why he did it in the first place? Well, I believe that would be his interpretation of the statute, which was supported by their witness at trial, Mr. Fraley, who talked about how the statute did not start to run until the first inspection began, whereas Mr. Yeager and then the legal department of the fire marshal's office interpreted that statute to mean that the statute, the one-year limitation, began running as soon as he took office. And so I think it's the distinction there. You mean you have one year to obtain your license if you need it. Yes. So it's one year either at the start of the office or from the first date of inspection. And based on that confusion between those two parties, even if this court was to find that Mr. Yeager did have an underlying constitutional violation here, it would seem to me that it would appear that this violation was not unreasonable as the legal department of the fire marshal's office did, in fact, confirm his belief that this statute started when he took office, and he had those 12 months beginning when he took office to get certified. And so it is our assertion here that that in and of itself shows that it was not unreasonable. I know that the plaintiff has asserted that his unreasonableness was largely in the prosecution of him, but once it got to the point of prosecution, Mr. Yeager had no role. He could not tell the district attorney, hey, I don't think you can meet your elements, because that is not his job. He cannot direct the district attorney. There are two separate offices here to where that cannot happen. Further, as it pertains to Anderson County, in the event that this court does determine that Mr. Yeager did not violate the constitutional rights of Mr. Coley, we would assert that the claims are inextricably intertwined. The plaintiff made no specific individual claims against Anderson County, so as such all the claims rise and fall with the guilt or innocence of Mr. Yeager, and therefore we would assert that if the court finds Mr. Yeager immune, they would also need to dismiss the claims. Is Yeager the only county defendant other than the county itself? Yes, Your Honor. There's a punitive damages claim in this case. The district court seemed pretty skeptical of that but allowed it to go forward. One of the allegations, in my mind the complaint was a little bit thin, but one of the allegations is that earlier in time there was an inspector who did inspections without a permit, and the county didn't go after that person, it only went after Crowley, and that was supposedly politically motivated. Can you help me understand what the story is with respect to this prior violation that was supposedly ignored? Are you referring to Lisa Crumpley, I believe is her name? I believe that would be the other violation, alleged violation, and she was an employee under Mr. Crowley at the time, and, yes, I do not believe that they did seek charges against her, but he was the overarching supervisor who, in my mind, would be instructed with ensuring that all of his employees were as well certified. I do believe she got certified throughout the process, but I do see the hesitance there with not asserting charges against him. It's really a question for your friends. Yes. That was the basis for the punitive damages claim, is that right? I believe so, but may I finish my thought? Sure. But I would also assert that, you know, you can't have a punitive damages claim without a 1983 violation, and so if qualified immunity is granted, punitive damages are nonexistent as well. Thank you. Thank you. Good morning. Bill Reeves for Mr. Crowley. May I introduce Lisa Hobbs, my associate who's also working on the case? There's not enough time to answer all the factual questions, but we'll try. I think you should dismiss this appeal for lack of jurisdiction simply because the issue of qualified immunity has been answered and answered negatively as to Mr. Corbett. Mr. Yeager's claim or issue of qualified immunity simply is moot. The 1983 action was dismissed. That's what it applies to. The history of qualified immunity is a common law defense to prevent a public servant defendant from going forward to trial if there is no constitutional violation. That issue was carefully reviewed by the district court as to Mr. Corbett and Mr. Corbett lost that issue. The connection of Mr. Yeager to the case is now civil conspiracy to violate civil rights, conspiracy to render false testimony, and impunitive damages. So none of those would be determined by a qualified immunity defense in his case. I'm sorry, I'm not understanding. I thought Yeager once qualified immunity on the civil conspiracy to violate the civil rights. This morning is the first time we have explicitly heard that stated that way. There's no authority for that. No authority meaning what? No authority to say that qualified immunity would extend to a civil conspiracy theory. Why not? Why isn't it just like Yeager was sued for malicious prosecution and the district court granted summary judgment to Yeager on that. Yeager is also sued on civil conspiracy to violate civil rights by participating in a plan to maliciously prosecute. I thought that's one of the three issues that's on appeal. Well, the qualified immunity defense only applies to the direct 1983 action. It does not apply to the civil conspiracy action. That was never. Why doesn't it apply? Well, first, it was never raised in the trial court. It was never argued, never briefed. There is no authority that I have found that says that. I thought there was not a motion on the conspiracy to render false testimony claim. That's correct. But that's different. I thought there were two different claims. No? Well, there are three theories that are still alive as to Mr. Yeager. Civil conspiracy to violate Mr. Crowley's civil rights, civil conspiracy to render false testimony, and the punitive damage. Right. And I understand the point that vis-à-vis the conspiracy to render false testimony claim, Yeager didn't move for summary judgment. So that claim, arguably, we have to let go forward. He made no argument, cited no authority on the first point, that the qualified immunity defense would somehow prevent the conspiracy claim. It's the same as if someone just assisted in the thing but didn't initiate the claim. The court's analysis of dismissing the 1983 action had to do with it being attenuated, was the word that he used. That doesn't mean he didn't undertake activities to support Mr. Corbett in going forward with the prosecution. What shows the conspiracy with Mr. Corbett? The factual connection is lengthy and, frankly, compelling, beginning with the memorandum that he wrote in December of 13 or January of 14, presented to county commission, which cited the statute. He claims that there was a one-year grace period that had expired. He didn't even read the administrative rules of the State Department of Fire Marshall, which had the authority to enforce this. Didn't even read the regs which say that the one-year grace period starts with a first inspection, not a date of employment. Mr. Crowley had many other duties. He filled in on five occasions to do inspections. They were all done within a 12-month period. The State Fire Marshall's official representative testified at the criminal trial about this regulation and that there was no violation of the grace period. There never was a violation of the licensing or certification requirement. You say it can't be negligence that he didn't read that. Let's say that you're correct, that it's just he did a poor job in satisfying himself that there truly was, that Crowley was outside his jurisdiction, unlicensed. So where do you get, I think Judge Moore's question is, where do you get the conspiracy? If he was negligent in assessing? His memorandum didn't mention that. The second point I was making, this memorandum was written in January of 2014. He also contacted the Fire Marshal's office. They told Mr. Crowley to stop doing inspections while we sort this out. It was their job to investigate and pursue any action, and they did not. Mr. Yeager, the county law director, didn't do anything either for almost three months until in April of 2014 when he learned that there was an effort to organize and file an ouster suit against him by friends of the county mayor, who was Mr. Crowley's supervisor. That's when he called the DA and the TBI agent and met with them and initiated the criminal investigation. That's, to me, the most significant fact that shows his intent to cooperate and violate this. Now, if that's too attenuated to make him directly liable in 1983, it certainly leaves him liable under civil conspiracy standard. Crowley, I sort of missed this explanation that it was the statute of limitations because I could see an argument that you have a year, the statute gives you a year to get your license. So if you don't have it on day one, you have a year to do it. And there's no doubt that Crowley was outside the one-year period. There's no doubt that he was not outside the one-year period. All right. There's no doubt that inspections happened more than a year after he took office. So did Yeager talk to Crowley? Did Crowley give this explanation? Was this reading of the Administrative Code ever made, given to Yeager, and Yeager sort of ignored it and said, no, I think it's the other way? Or did he just sort of miss the issue as a lawyer? Mr. Crowley is a contractor. He was called in to Yeager and said, I'm investigating you. He didn't even know what it was about at that point. It was in the course of the criminal process. Did you say they met and he didn't even ask the question what it was about? I mean, what's that, what you just told us, they met? About the particular point of the grace period. There is a 12-month grace period that by regulation starts based on job duty, not the hiring date. That was explicitly testified to by the State Fire Marshal. Mr. Yeager, who's the one initiating all this, never looked at the reg, never asked the question, never presented that evidence. That's one facet of the lack of information presented in the prosecution. Did Crowley know about this legal interpretation? Not when Mr. Yeager initially talked to him, no. What was Crowley's explanation for why he was doing these inspections more than a year after the time? He knew the one-year limitation period, I think, and he didn't know this administrative code issue about the trigger. This other employee, Ms. Crumpley, simply asked him to fill in. He went and did inspections. That was his subordinate. She was the subordinate, but she was the supposedly qualified inspector. And the other point about what Mr. Yeager knew, she had been determined two years before this to be uncertified. There was an investigation. There was a work out by the State Fire Marshal. Mr. Yeager was involved in all of this and made no criminal referral. This criminal referral was specifically in retaliation for a political motive. I'm curious about the timing of the ouster suit. I thought Yeager testified that the ouster suit was in May of 2014. It was filed in May, but he testified that he found out about it shortly before he met with Mr. Clark and Mr. Corbett to initiate the investigation of Ms. Yeager. He had heard about it specifically from a sheriff's deputy who called and told him he'd been asked to participate. That's clearly in his testimony. The timing of that is, from our standpoint, impeccable in proving the motivation of why he did this. The other point of this criminal statute is that there must be an immediate risk to the safety, life, and welfare of a person. There was never any evidence developed by anyone of that. There was no homeowner complaint, no contractor complaint, nothing. I suppose the purpose of the licensing law is to make sure on the front end that people that are inspecting homes and offices are ensuring that it's a safe facility. You're saying just because one didn't fall down that there was no harm here. I assume that part of the point of the licensing is to prevent the risk that a home is inspected by a layman as opposed to an expert. I think everyone admitted Mr. Crowley was an expert in the field. It's just that the technical certification had not been completed. He had failed a test, right? He did fail tests or tests and knowing how to do stuff is something else. There was never any suggestion that his inspections were not correct. They were verified by an engineer. That was done immediately upon the indictment. There was never any evidence developed. I guess I might defer to the Tennessee legislature that put this licensing rule in place for a reason that they thought it important that people be inspected when they're doing these jobs. But just to make sure I understand the story. So the story is that Yeager knew about the one-year administrative code provision that arguably means that the limitations period runs after the first inspection but intentionally ignored that because he knew about this ouster suit and wrote a memo that intentionally omitted, as opposed to just a lawyer missing an issue, that he intentionally omitted this administrative code issue that Crowley also didn't know about apparently. The sequence is Mr. Yeager intentionally ignored the violation. Why do you say that? I know that seems an important feature here. What do you base that upon? There are letters in the record to and from the state fire marshal when this Ms. Crumpley was stopped, in fact suspended, because she'd been doing inspections. This is all before, two years before. The state fire marshal letter said what with respect to Yeager's knowledge about the timing of the licensure? In regard to Ms. Crumpley, Mr. Yeager was in the meetings. He was copied on the correspondence. There was a workout plan initiated in writing by the former director of this office, the former Mr. Crowley, if you will, and it was all worked out administratively with the state fire marshal. And this happened before the Crowley? This happened beginning in 2012, two years before, and before the administration changed. All of that you're telling us informed Mr. Yeager about when licenses trigger, when it matters that you have inspected unlicensed. Certainly that, and informed him about the role of the state office. Is that the more important thing, that he should have just let it be handled by the fire marshal? Absolutely, and it was handled by the fire marshal. Okay, and so you say he was an officious intermeddler here, that he placed himself in as the person who must report. He was a political retaliator. Well, I know that's your view. Officious intermeddler sounds good, too. So Yeager, who's the person that we're concerned about getting qualified immunity here, Yeager should, in your view, have raised his concerns with the fire marshal. He did, in fact, call them. Did he call the fire marshal? In January, and they sent a letter to Mr. Crowley. Mr. Crowley said, all right, I will not do another inspection until this is resolved or I get certified. He did not. There was no urgency. So why couldn't Yeager, at that point, having contacted the fire marshal, the fire marshal having contacted Crowley, why couldn't Yeager forward a memo on to the district attorney at that point saying, thought you should know about this? Because there was no evidence, no indication at all, ever, of a violation of a criminal statute. The criminal statute expressly provided, required this danger to the public. There was never an evidence. Wasn't that the duty of the prosecutor then, the law director, whomever it was, to sort that out and decide whether to bring charges? In my view, it would have been the duty of the state fire marshal to investigate and resolve it. I know, but let's say, like Judge Moore argues or questions, let's say, what is the sin in Yeager sending the memo? Because he could depend upon the prosecutor to say, yeah, there's nothing here. He didn't just send a memo. He called a meeting, again, almost three months later, after all this had been resolved. You want to say it was more than sending a memo? Yes. All right. He called for a meeting. That's your answer. That I get. Yes, and Mr. Corbett, the TBI investigator, said that all of the information that he used in conducting the investigation came from Mr. Yeager. You say Yeager called a meeting. Yeager met with whom? Mr. Clark, the DA, his friend and investment partner for 15 years, and Mr. Corbett, the TBI investigator, who had a multi-county area. He was not just an investigator, but he was very familiar. When did that meeting occur? That meeting occurred on April 2, 2014, in the DA's office, which is in the same building as Mr. Yeager's. And you took depositions of everybody? Yes. So did you find that Yeager did anything improper in that meeting? Do you have evidence that would support your position? He presented his position that Mr. Crowley ought to be criminally investigated and prosecuted for a statute which he clearly, for two weeks. Yeager said that at the meeting? Yeager presented that to Mr. Corbett, according to Mr. Corbett, that there was no one else. Let Corbett decide. To let Corbett investigate. There was no one else who initiated anything other than Mr. Yeager. But Corbett is the TBI investigator. He was then charged with investigating whether or not Crowley had done anything criminally wrong. He undertook to investigate. He talked to the homeowners, to the contractors. He talked to six or eight county commissioners who knew nothing. It is he who decided to move forward. Having known everything that he knew, which he did the investigation, not the defendant here who is seeking qualified immunity, right? The defendant never changed his mind. He gave another sworn statement in September which supported the investigation. That is in the record. You are correct when you said that you would have more information than we would have time for. Yes, I know. I have two quick questions. When Yeager called the fire marshal and the fire marshal then called Crowley and said cut it out, did the fire marshal say to Yeager you are misinterpreting the statute? This period actually runs from a different time. There was never any follow-up by Yeager. The fire marshal simply wrote to Mr. Crowley and said don't do them. We have had this issue come up and he did not. Again, Mr. Yeager never even looked at the reg. Assuming he doesn't look at the reg, he calls the fire marshal, who you are telling us is familiar with the reg and testified to it at trial. The fire marshal doesn't say to Yeager, hey, you missed an issue, you're out of line here. We're not going to call him because your legal basis for doing it is wrong. Again, consider the timing. This entire thing was over in January. There was nothing else done until April 2nd when Mr. Yeager, because he for whatever reason felt politically threatened, went and initiated it with the DA. I mean he had two and a half months to do it if there had been some reason to do it. On punitive damages, you had a chance to brief that, I think, in your brief to this court. Is there anything more to the story with respect to punitive damages or is it basically this same story was also? I have two pages of bullet points. What's the very best? Is there one fact that we haven't talked about that really? I think the juxtaposition between the manner in which Mr. Yeager dealt with the egregious violations of Ms. Lisa Crumpley prior to Mr. Crowley taking office where nothing of a criminal investigation was initiated and where you had this confusion about five inspections done, arguably as far as he knew, within the grace period and then initiate a criminal prosecution after waiting from January 14th until April 2nd to do something. The juxtaposition of that is inexplicable to me. But a punitive damages claim has to rely on some underlying wrong. What do you tie the punitive damages claim to? The conspiracy between Mr. Yeager and Mr. Corbett to not present the entire truth of this matter to anyone where they willfully went forward through this entire prosecution with no evidence of violation of the grace period, no evidence of any urgency of any danger, risk under the criminal statute. So it's tied to your civil conspiracy to violate the civil rights via malicious prosecution. And the conspiracy to withhold evidence or present false evidence. Thank you very much. Sorry to take you beyond your time. Thank you. Good to be here. A brief reply, Your Honors. As to the civil conspiracy allegations of how qualified immunity shouldn't apply here, their civil conspiracy claim has been pled numerous ways. I believe I mentioned in a footnote in the response they've called it a civil rights conspiracy. There are numerous ways you can have a civil rights conspiracy. However, the district court in its memorandum opinion and order treated it as a 1983 civil rights conspiracy. And that's how we briefed it, in essence, was in accordance with the interpretation of the district court, which we deem to be the binding precedent here. And so as such, as it has been interpreted to be a 1983 civil rights conspiracy, because there has to be that constitutional violation, we would assert that defendant Yeager is, in fact, entitled to qualified immunity as to that claim. And again, that the constitutional violation then would have to be the existence of a conspiracy. If this court wants to say that presenting a memo and maybe having a discussion is an overt act in furtherance of a conspiracy. Well, that could potentially create a chilling effect for all law directors or someone who becomes aware of potential wrongdoing who wants to alert the proper party to conduct such an investigation. Your theory is that Yeager should have known that the fire marshal's interpretation of the requirement of the one year provision was inapplicable here or had not been violated here. And their other part of their theory is that this is all part of this conspiracy having to do with the ouster of the mayor. Yes. As to the fire marshal part of it, I would reassert that Crowley did call the fire marshal to see if he was certified. They confirmed that he was not certified. He then asked to speak with someone. Is that in the record? Unfortunately, your opponent is shaking his head that it isn't. Is that in the record? I believe it is, Your Honor. I can't point you off the top of my head to the exact page, but I do believe it is. Where would we find it? Not the page, but is it in the deposition? Where is it? I believe it's in the deposition of Defendant Yeager that he called the fire marshal and that they confirmed. Before going to the prosecutor. Correct. And then he asked to speak with someone in the legal department of the fire marshal's office as well. He asked to speak. Did he speak? He says he did, yes. In his deposition? Yes, as to a lady named Ferguson, I believe is her name. What does Yeager say the fire marshal's office told him? He says that Ferguson read out the dates of the inspection and that she said that those inspections were against the law. I believe that that is referenced both in the District Court's Memorandum of Opinion and Order in the facts section as well as in my brief with the correct sites to the record. I believe that this court also was referring to the ouster claims against Defendant Yeager. I would assert that it's a reach to tie the two together. With the mayor and then a building inspector, there is no logical connection between the two in my mind. I gathered that there were people who supported one person, the mayor, and other people who supported some other person and wanted the mayor to be ousted. The theory of your opponent is that Yeager was doing this against Crowley in furtherance of this ouster situation. For clarification, it's alleged that the mayor wanted Yeager ousted. It was a case that's been decided and Mr. Yeager prevailed. So it wasn't trying to oust the mayor, it was trying to oust Yeager? Correct. Like I said, Mr. Yeager prevailed on that case. But to say that Mr. Yeager specifically pointed to a building inspector as a way to retaliate against the mayor, wouldn't there be more relevant, more pertinent persons for Mr. Yeager to attack should this have been a specific attack against the mayor's ouster claim? Are these factual questions that would preclude summary judgment? I don't believe so, Your Honor, because I don't believe that the ouster claim is relevant to the conspiracy. The conspiracy alleged would be between Yeager, District Attorney Clark, and TBI investigator Corbett. None of those individuals pertain to the ouster claim, and as it stands, the conspiracy would be between those three individuals. What is your response to the point supporting punitive damages that Crumpley, earlier in time, potentially did inspections that were in violation of the law and Yeager overlooked them? I don't quite understand the argument, but what's your take on this? I would say that that's a separate incident that doesn't necessarily weigh on this matter, as issue here is the 1983 violations against Mr. Crowley, and it doesn't pertain to the issues of Ms. Crumpley. But if you look at the actions of Mr. Yeager in connection with Ms. Crumpley, I would say that, you know, at that time, there was still someone above Ms. Crumpley who could conduct the inspections. There was a person there, and so they followed what the fire marshal specifically directed. I'm not aware of any facts in the record, to my knowledge anyways, that the fire marshal's office specifically directed Mr. Yeager to do anything besides inform him that these inspections were done without a license and that they were allegedly outside the period. Thank you. Thank you. Both for your argument. The case will be submitted, and would the clerk call the next case, please?